IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DIANE GONZALEZ, individually and on behalf of all others similarly situated, | CLASS ACTION |
| *Plaintiff*, | |
| vs. | JURY TRIAL DEMANDED |
| UNITEDHEALTH GROUP, INC., a foreign corporation, | |
| *Defendant*. | |

_____/

## CLASS ACTION COMPLAINT

Plaintiff Diane Gonzalez, brings this class action against Defendant, UnitedHealth Group, Inc., and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), arising from Defendant's knowing and willfully violations of the TCPA.

2. Defendant is a for-profit managed healthcare company that offers healthcare products and insurance services.

3. As part of its business, Defendant engages in unsolicited telemarketing directed towards prospective customers with no regard for consumers' privacy rights.

4. Defendant's telemarketing consists of placing prerecorded calls to consumers soliciting them to invest in its goods and/or services.

5. Upon information and belief, Defendant caused thousands of prerecorded messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars and zero-cents) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

8. Venue is proper in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal

jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Texas and, on information and belief, Defendant has sent the same telephone call complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Texas.

## PARTIES

9. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Coryell County, Texas.

10. Defendant is a foreign corporation headquartered in Minnesota with its principal place of business located in Minnetonka, Minnesota. Defendant directs, markets, and provides its business activities throughout the State of Texas.

## THE TCPA

11. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

12. The TCPA further prohibits: (1) any person from initiating a call to any residential telephone line; (2) using an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(B).

13. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

16.     In 2012, the FCC issued an order further restricting automated <u>telemarketing</u> calls, requiring "prior express <u>written</u> consent" for such calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

17.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

18.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

19.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"

*Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

20. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

21. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

22. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

23. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

## **FACTS**

24. On or about September 24, 2019, October 30, 2019, and October 31, 2019, Defendant called Plaintiff's cellular telephone number ending in (917) 868-8805 ("8805 Number") with prerecorded messages.

25. Plaintiff is the subscriber and/or sole user of the 8805 number.

26. The prerecorded messages that Plaintiff received stated as follows:

> This is an important called from UnitedHealthCare to inform you about its house calls program. Please call us back at 1-866-686-2504 TTY 711 from 8:00 am to 8:30 pm Monday through Friday Eastern Standard Time. It is important that we speak with you. Thank you.

27. The prerecorded messages were sent from the telephone number which upon information and belief is owned and/or operated by or on behalf of Defendant.

28. The number referenced in the prerecorded messages, 866-686-2504, is owned and/or operated by or on behalf of Defendant.

29. When Plaintiff listened to the messages, Plaintiff was able to determine that they were prerecorded. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

30. The purpose of Defendant's call to Plaintiff was to promote Defendant's services.

31. Specifically, the prerecorded messages attempt to solicit Plaintiff to become a client of Defendant's at home health services for which Defendant would then make a profit.

32. As explained by Beverly Merz, Executive Editor of *Harvard Women's Health Watch*, a part of Harvard Health Publishing at Harvard Medical School, insurers use these house calls to increase the risk score of patients and get higher Medicare reimbursement for each doctor visit:[1]

> Dr. Michael McWilliams suggested an answer. As an associate professor of health policy at Harvard Medical School, he understands the arcane regulations that cover how Medicare reimburses my Medicare Advantage plan for the care I get. He told me that each of us covered by these plans is assigned a risk score. As we develop more health problems, our risk score increases. "The home visits conducted by Medicare Advantage plans allow for the capture of more diagnoses, which in turn increases the risk score that adjusts plan payments from Medicare. Generally speaking, the more diagnoses

---

[1] *See* https://www.health.harvard.edu/blog/medicare-advantage-when-insurance-companies-make-house-calls-201512168844; (last visited December 9, 2019).

recorded, the higher the payment," Dr. Williams says.

He explains that the risk adjustment system was created to ensure that plans don't enroll only the healthiest patients, who are less likely to run up charges for expensive procedures and hospital stays. To provide an incentive for insurers to cover sicker patients, the plans are paid commensurately more for their care.

I've received two more calls since I first declined the home visit, each more persistent than the last. Now I understand why. If the clinician could diagnose me with a serious health condition, the company could raise my risk score and get a higher Medicare reimbursement each time I visit the doctor.[2]

33.     Similarly, the Center for Public Integrity article, *Home is Where the Money is for Medicare Advantage Plans*, states "health plans tout the voluntary, free annual physicals as a major new benefit that can help selected members stay fit and in their homes for as long as possible" but "there's more to . . . in home visits than the appearance of enhanced elder care. The house calls can be money makers for health plans. . . ."[3]  The Center for Public Integrity explains that

[h]ealth plans can profit because Medicare pays them higher rates for sicker patients using a billing formula known as a 'risk score.' So when a home visit unearths a medical condition, as it often does, health plans may be able to raise a person's risk score and collect thousands of dollars in added Medicare revenue over a year — even if they don't incur any added expenses caring for that person.[4]

34.     Defendant has made a significant number of automated and/or prerecorded calls to persons on their cellular telephones in Texas and throughout the United States. Consumers have posted online about Defendant's harassing calls:[5]

- 9/26/19: Re: I am sick of all these phone calls, UNITED HEALTHCARE. I keep getting these calls as well but they come up as scam on my phone. So I called UHC and told them what was going on. First they said it doesn't look like one of their numbers, then they tried calling the number which came up as disconnected 5 minutes after they called me. Then they researched my account and said there are no records of of any calls that need to be made to me from UHC for any reason. The

---

[2] *Id.*
[3] https://publicintegrity.org/health/home-is-where-the-money-is-for-medicare-advantage-plans/ (last visited December 9, 2019).
[4] *Id.*
[5] *See* https://community.aarp.org/t5/Medicare-Insurance/I-am-sick-of-all-these-phone-calls-UNITED-HEALTHCARE/td-p/1285717 (last visited December 9, 2019).

        only time it showed I was to receive a call from them was for a welcome call 1 1/2 years ago when I became a member. THIS IS A SCAM!!!!! The phone number calling me is 952-367-8000. If you receive a call from them, UHC verified it is a scam.[6]

- 9/1/19: House Calls is service not a requirement. They are notorious for bothering people. I agree with you about there being Medicare, UHC and their contractors between you and your doctor. No wonder Medicare costs are high. Too many people making money off something you already paid for.[7]

- 7/26/19: What's up with these "House Calls" program? I have a great relationship with my primary doctor, I make all of my visits, have all of my tests run on time, yet UHC keeps calling me about these home visits. I find it to be a gross invasion of privacy.[8]

- 9/20/18: I use to work for the housecalls program. We were yelled and screamed at all the time. We called the same people over and over even when they said no more calls they didn't care they forced us to call over and over. Uhc dont care. We were forced to get 15 to 20 appointments per day. It was like telemarketing. We had to con members into getting it done lie if needed. Dont do the housecalls program. It's a waste of time. They will cram it down your throat like it's the best thing in the world.[9]

35.     Defendant is aware of the TCPA's prohibitions against the use of automatic dialing systems and artificial or prerecorded voices to make calls to cellular phones without the prior express consent of the called party. Defendant therefore knowingly or willfully caused automated calls to be made to the cellular phones of Plaintiff and other consumers without their prior express consent.

36.     At no point in time did Plaintiff provide Defendant with express consent to be contacted by Defendant with a prerecorded message.

37.     Defendant's unsolicited prerecorded message calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's calls also inconvenienced Plaintiff and caused disruption to her daily life.

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

38.     Further, Plaintiff estimates that she wasted at least 27 seconds listening to one or more of Defendant's unwanted messages.

39.     Defendant's messages also took up space on Plaintiff's phone and caused the depletion of Plaintiff's cellular telephone battery. The battery used to power Plaintiff's cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff's cellular telephone.

## CLASS ALLEGATIONS

### PROPOSED CLASS

40.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

41.     Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, received a telephone call made through the use of a prerecorded voice, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, for the purpose of promoting Defendant's "House Calls" program.**

42.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

43.     Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

44. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

45. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> **(1)** Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using prerecorded messages;
>
> **(2)** Whether Defendant can meet its burden of showing that it obtained prior express consent to make such calls;
>
> **(3)** Whether Defendant's conduct was knowing and willful;
>
> **(4)** Whether Defendant is liable for damages, and the amount of such damages; and
>
> **(5)** Whether Defendant should be enjoined from such conduct in the future.

46. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits prerecorded messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

47. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

48. Plaintiff is a representative who will fully and adequately assert and protect the

interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

49. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

50. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Class)**

51. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

52. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or prerecorded or artificial voice… to any telephone number assigned to a …

cellular telephone service ….." 47 U.S.C. § 227(b)(1)(A)(iii).

53. Defendant – or third parties directed by Defendant – used prerecorded messages to make non-emergency telephone calls to the cellular telephones of Plaintiff and other members of the Class.

54. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

55. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using a prerecorded message to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

56. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using prerecorded messages. The violations were therefore willful or knowing.

57. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

58. Because Defendant knew or should have known that Plaintiff and the other members of the putative Class had not given prior express consent to receive its prerecorded calls to their cellular telephones the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

**WHEREFORE**, Plaintiff, Diane Gonzalez, on behalf of herself and the other members of the Class, pray for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

a. An injunction prohibiting Defendant from using an automatic telephone dialing system to call cellular telephones without the prior express permission of the called party;

c. An award of actual and statutory damages; and

d. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the Defendant and the communication or transmittal of the calls as alleged herein.

Dated: December 10, 2019

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**

/s/ Angelica M. Gentile
Angelica M. Gentile, Esq.
Texas Bar No. 24112322
agentile@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: 305-479-2299

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: (954) 400.4713
Email: mhiraldo@hiraldolaw.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
(*pro hac vice* to be filed)
David M. Sholl, Esq.
Florida Bar. No. 114791
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com
david@edelsberglaw.com

*Counsel for Plaintiff and the Class*