IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | | |
|---|---|---|
| DIANE GONZALEZ, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff | § § | Case 6:19-cv-00700-ADA-JCM |
| v. | § § | |
| UNITEDHEALTH GROUP, INC., A FOREIGN CORPORATION; AND OPTUM, INC., | § § § | |
| Defendants. | | |

**DEFENDANT OPTUM, INC.'S MOTION TO
DISMISS, TRANSFER, OR STAY**

i

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1
BACKGROUND ............................................................................................................... 1
I.     The Parties: Gonzalez and Optum ........................................................................ 1
II.    The FCC will soon decide how reasonable reliance on consent prevents TCPA liability. ................................................................................................................. 2
III.   This case overlaps with two other earlier-filed cases, *Matlock v. United HealthCare Services, Inc.* (E.D. Cal. 2013) and *Humphrey v. United HealthCare Services, Inc.* (N.D. Ill. 2014).......................................................................................................... 4
IV.   The U.S. Supreme Court may invalidate the TCPA provision underlying Plaintiff's claim...................................................................................................................... 5
ARGUMENT ..................................................................................................................... 6
I.     The Court should dismiss, transfer, or stay this case under the first-to-file rule. ............... 6
    A.   This case substantially overlaps with *Matlock/Humphrey*, which was filed in 2013. ........................................................................................................ 6
    B.   The Court should dismiss the case without prejudice or, alternatively, stay or transfer it. ................................................................................................. 8
II.    The Court should stay this case pending FCC rulemaking under the primary jurisdiction doctrine. ............................................................................................. 8
    A.   Key issues in this case are already pending before the FCC and require its specialized expertise. .............................................................................. 9
    B.   A brief stay will not prejudice Plaintiff, but denying a stay will prejudice Optum. ....................................................................................................... 11
III.  At a minimum, the Court should stay this case pending the Supreme Court's decision on whether the TCPA's cell phone restriction is invalid in its entirety.............. 12
    A.   Denying a stay pending the U.S. Supreme Court's decision will prejudice Optum. ....................................................................................................... 13
    B.   Granting a stay will not prejudice Plaintiff because she does not allege a continuing violation, this case is at an early stage, and the stay would be brief. ....................................................................................................... 15
    C.   A temporary stay would promote judicial economy during a global pandemic... 16
CONCLUSION................................................................................................................ 16

**INTRODUCTION**

Plaintiff Diane Gonzalez ("Gonzalez") claims that Defendant Optum, Inc. ("Optum")[1] called her cell phone three times without her consent. Instead of asking Optum to stop calling her, she brought a meritless putative nationwide class action under the Telephone Consumer Protection Act ("TCPA"). While Gonzalez's claims suffer from multiple fatal flaws, at this early juncture Optum moves to dismiss, transfer, or stay this case. The Court should dismiss, stay, or transfer this case to the Eastern District of California due to its overlap with two class action cases already pending there. If it doesn't, the Court should, like many other courts faced with TCPA class actions, stay this case while the Federal Communications Commission ("FCC") considers several TCPA questions that will likely affect whether Optum faces *any* TCPA liability for calling someone it did not intend to reach, and without receiving any request from the call recipient not to call. And at a minimum, this Court should, like many other courts, stay the case at least until the U.S. Supreme Court decides whether the *entire* basis for Plaintiff's claim—the TCPA's cell phone restriction—violates the First Amendment. *See Barr v. American Association of Political Consultants, Inc.*, No. 19-631, *cert. granted*, Jan. 10, 2020 (oral argument on May 6, 2020).

**BACKGROUND**

**I.      The Parties: Gonzalez and Optum**

Gonzalez alleges that Optum violated the TCPA's cell phone restriction, 47 U.S.C. § 227(b)(1)(A)(iii),[2] by calling her cell phone with a pre-recorded message about a "house calls program" offered by "UnitedHealthCare." First Am. Compl. ("FAC"), ECF No. 14, ¶¶ 26-29,

---

[1] Although UnitedHealth Group Inc. ("UHG") remains on the caption as a defendant, UHG was dismissed, ECF No. 18, and UHG's unopposed motion to amend the caption to remove its name from the caption, ECF No. 17, is pending.

[2] This section prohibits calls without consent using an autodialer or prerecorded voice "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States."

1

53, 56. She does not allege she ever asked anyone at Optum or its affiliated entities to stop calling her, or that she ever told Optum it had the wrong number. Yet she seeks to certify a nationwide class of anyone who received a pre-recorded call "promoting Defendant's 'House Calls' program." *Id.* ¶ 42.

HouseCalls is a preventative care program operated by Optum. Declaration of Ryan C. Wong ¶ 2 ("Wong Decl."). "HouseCalls" are clinical home visits that combine (1) a comprehensive geriatric assessment by a clinician with (2) referrals to community providers and health plan resources to address uncovered medical or other health issues. Soeren Mattke *et al.*, *Medicare Home Visit Program Associated With Fewer Hospital And Nursing Home Admissions, Increased Office Visits*, 34 Health Affairs 2138, 2138 (2015). The HouseCalls program reduces members' risk of admission to hospitals and nursing homes. *Id.* The program also intends to call only members of UnitedHealthcare health plans, who consent to be called. *See id.* at 2139; Wong Decl. ¶ 2.

## II.     The FCC will soon decide how reasonable reliance on consent prevents TCPA liability.

The TCPA does not impose liability for phone calls made with an autodialer or prerecorded voice if the calls are made with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). For example, when a company obtains consent from the current subscriber to a phone number, and then calls that subscriber's phone number, there is no TCPA liability. An issue arises, however, when Person A provides consent to a company to call a phone number—but when the company calls, the phone number is assigned to Person B. This often happens when Person A's number is reassigned, or Person A accidentally provided the wrong number to the company. In these situations, the company intends to call Person A, who consented. That raises the question: who is the "called party" whose consent is required, Person A or B?

The FCC tried to answer this question in 2015. The Commission started from the basic premise that reasonable reliance on evidence of prior express consent bars TCPA liability. *See In*

*the Matter of Rules & Regulations Implementing the TCPA of 1991*, 30 F.C.C. Rcd. 7961, 8009 n.312 (2015) ("the TCPA anticipates the caller's ability to rely on 'prior express consent,' 47 U.S.C. § 227(b)(1), and [the FCC] interpret[s] that to mean reasonable reliance").  To implement this interpretation, the FCC created a safe harbor for a caller's first call to a reassigned number.  The D.C. Circuit set aside this "one-call" safe harbor as too narrow and unsupported by the FCC's reasonable reliance principle.  *See ACA Int'l v. FCC*, 885 F.3d 687, 707-09 (D.C. Cir. 2018).  The court opined that a "caller's reasonable reliance on a previous subscriber's consent" would not "necessarily cease to be reasonable once there has been a single, post-reassignment call" when that call "might give the caller no indication whatsoever of a possible reassignment." *Id.* at 707.

Since that decision, the FCC has engaged in rulemaking on how to expand its reasonable reliance safe harbor to account better for situations where a person inadvertently receives calls that another person consented to.  *See* Consumer & Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's *ACA International* Decision, 83 Fed. Reg. 26284-01, 26285 (June 6, 2018) ("FCC Seeks Comment") (seeking comment on, *inter alia*, whether "called party" refers to the person the caller expected to reach).  A final ruling is "impending." *Barnes v. CS Mktg. LLC*, 2020 WL 30373, at *3 (S.D. Fla. Jan. 2, 2020); *see also In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 F.C.C. Rcd. 12024, 12071 (2018) (concurring statement of Commissioner O'Rielly) ("[A] comprehensive redo of our TCPA rules will be considered promptly.").  The public comment period on how to respond to the D.C. Circuit closed in June 2018, and recent legislation mandates an FCC report on related issues by the end of 2020.  *See* FCC Seeks Comment, 83 Fed. Reg. at 26284; Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence ("TRACED") Act, Pub. L. No. 116-105, § 9, 133 Stat. 3274, 3283-84 (2019).

3

**III.     This case overlaps with two other earlier-filed cases, *Matlock v. United HealthCare Services, Inc.* (E.D. Cal. 2013) and *Humphrey v. United HealthCare Services, Inc.* (N.D. Ill. 2014).**

In the fall of 2013, a plaintiff brought a case against Optum's affiliate, United HealthCare Services, Inc. ("United"), Wong Decl., ¶ 3, that seeks to certify a nationwide class of all people "who received any telephone call/s" from "[United] or its agent/s and/or employee/s" to their "cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice."  Declaration of Maxwell V. Pritt ("Pritt Decl."), Ex. A, Compl. ¶ 24, *Matlock v. United HealthCare Servs., Inc.*, No. 13-cv-2206, ECF No. 2 (E.D. Cal. Oct. 22, 2013).

The *Matlock* court consolidated a later-filed case, *Humphrey v. United HealthCare Services, Inc.*, No. 2:14-cv-01792 (E.D. Cal.), which was transferred from the Northern District of Illinois.  *See Humphrey v. United HealthCare Services, Inc.*, No. 14-cv-1157 (N.D. Ill.).  In *Humphrey*, the "[p]laintiff seeks to represent a class of consumers who was called by United Healthcare using an artificial or pre-recorded voice without the consent of the called party."  Pritt Decl., Ex. B, *Humphrey* Compl. ¶ 20, No. 13-cv-2206, ECF No. 48 (Feb. 28, 2014).

*Matlock* and *Humphrey* are currently stayed under the primary jurisdiction doctrine.  *See Matlock*, Minute Order, No. 13-cv-2206, ECF No. 59 (E.D. Cal. Oct. 29, 2019).  The *Matlock/Humphrey* court recognized that whether the plaintiffs in those cases suffered violations of the TCPA "turns, in large part, on whether the 'prior express consent of the called party' [language in the TCPA] refers to the party the caller intended to reach or the actual recipient of the call."  *Matlock*, 2014 WL 1155541, at *1 (E.D. Cal. Mar. 20, 2014).  The *Matlock/Humphrey* court has renewed its stay several times pending the FCC's determination of this potentially dispositive issue.  *See, e.g.*, *Matlock*, Minute Order, ECF No. 59; Order, ECF No. 56 (Apr. 16, 2019).

Similarly, Plaintiff Gonzalez alleges she received three calls from "UnitedHealthCare . . . about its house calls program," and seeks to certify a nationwide class of persons who "received

4

a telephone call made through the use of a prerecorded voice, from Defendant or anyone on Defendant's behalf, for the purpose of promoting Defendant's 'House Calls' program." FAC ¶¶ 28, 42. Gonzalez alleges that members of her putative class suffered violations of the TCPA when Optum called their cell phones without "prior express consent of the called party." *Id.* ¶ 53 (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). That is the same claim at issue in *Matlock* and *Humphrey*.

### IV. The U.S. Supreme Court may invalidate the TCPA provision underlying Plaintiff's claim.

Earlier this year, the U.S. Supreme Court granted certiorari to review the constitutionality of the TCPA's cell phone restriction, 47 U.S.C. § 227(b)(1)(A)(iii)—also the very same provision on which Gonzalez bases her claim. *Compare Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631, SCOTUSblog, https://www.scotusblog.com/case-files/cases/barr-v-american-association-of-political-consultants-inc/ (cert. granted on January 10, 2020), *with* FAC ¶¶ 26, 53, 56. Respondents on appeal argue that the cell phone restriction (that forms the basis of Gonzalez's claim here) violates the First Amendment because it exempts certain calls based on their content. *See* Br. for Respondents at 33-51 (Mar. 25, 2020). And they are likely to prevail if history is any guide. When the Supreme Court grants certiorari, it reverses around 73 percent of the time. *See, e.g.*, Hon. Timothy B. Dyk, *Thoughts on the Relationship Between the Supreme Court and the Federal Circuit*, 16 Chi.-Kent J. Intell. Prop. 67, 72 (2016). This reversal rate is even higher where, as here, there is no circuit split. *See* Stephen L. Wasby, *How the Ninth Circuit Fares in the Supreme Court: The Intercircuit Conflict Cases*, 1 Seton Hall Circuit Rev. 119, 128 (2005).

Telephonic oral argument is scheduled for Wednesday, May 6. Supreme Court of the United States, *Oral Argument Calendar May 2020* (Apr. 15, 2020). A decision is expected by June 29.[3]

---

[3] "All opinions of the Court are, typically, handed down by the last day of the Court's term (the day in late June/early July when the Court recesses for the summer)." *Supreme Court Procedures*,

5

# ARGUMENT

**I.     The Court should dismiss, transfer, or stay this case under the first-to-file rule.**

Optum respectfully requests that the Court dismiss, transfer, or stay this case under the first-to-file rule. Federal courts have long recognized a compelling interest in avoiding duplicative litigation. "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 & n.1 (5th Cir. 1985) (citations omitted). District courts may dismiss, stay, or transfer actions under the first-to-file rule when "the issues presented can be resolved in an earlier-filed action pending in another district court." *Id.* Because the issues in this case are subsumed by those in the first-filed *Matlock* and *Humphrey* cases, this case should be dismissed without prejudice.

**A.     This case substantially overlaps with *Matlock/Humphrey*, which was filed in 2013.**

The first-to-file rule applies when there is a "likelihood of substantial overlap" between two cases. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (quoting precedent). Neither the issues nor the parties in the cases need to be identical. *Id.* As long as a likelihood of substantial overlap exists between the two actions, the court in the later-filed case should dismiss, stay, or transfer its case "in the absence of compelling circumstances." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). "[T]he ultimate determination of whether there actually [is] a substantial overlap" lies with the court with the *first*-filed case. *Id.* at 408.

The "likelihood of substantial overlap" requirement is easily met here. This case, *Matlock*, and *Humphrey* are all nationwide putative class actions with causes of action brought against United (or its affiliates like Optum) under the TCPA's cell phone provision, 47 U.S.C.

---

https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-1 (accessed Apr. 24, 2020).

§ 227(b)(1)(A)(iii). *Compare* FAC ¶¶ 26 ("Defendant called Plaintiff's cellular telephone number"), 53 (alleging violation of § 227(b)(1)(A)(iii)), 56 (same), *with* Pritt Decl., Ex. A, *Matlock* Compl. ¶ 26 (same), *and* Pritt Decl., Ex. B, *Humphrey* Compl. ¶ 22 ("All of the class members' claims hinge on the common factual and legal contention that Defendant made an illegal call to cellular phone numbers in violation of the TCPA. See 47 [U.S.C.] § 227(b)(1)(A)(iii)."). All three cases plead putative class definitions that include persons who received a pre-recorded call. *Compare* FAC ¶ 42 ("received a telephone call made through the use of a prerecorded voice"), *with* Pritt Decl., Ex. A, *Matlock* Compl. ¶ 24 ("received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice"), *and* Pritt Decl., Ex. B, *Humphrey* Compl. ¶ 20 ("called by United Healthcare using an artificial or pre-recorded voice"). And all three cases allege that the violations were willful or knowing, and thus eligible for treble damages. *Compare* FAC ¶¶ 1, 57, *with* Pritt Decl., Ex. A, *Matlock* Compl. ¶¶ 40-41, *and* Pritt Decl., Ex. B, *Humphrey* Compl. ¶ 30.

  This case and *Matlock/Humphrey* raise shared factual and legal issues. "In other words, the record shows that the overall content of each suit, far from being capable of independent development, would likely overlap to a substantial degree." *Mann Mfg.*, 439 F.2d at 407. For example, all three cases will involve briefing about whether the calls at issue are exempt from TCPA liability because they "deliver[] a 'health care' message." 47 C.F.R. § 64.1200(a)(2). All three may involve discovery, and disputes about its scope, that overlap. It would conserve judicial and party resources to consolidate discovery and resolve legal issues in one court instead of two. And there are no compelling circumstances that warrant retaining this case. It is still in its infancy, and there is nothing unique, let alone compelling, about Gonzalez or the calls she allegedly received.

**B.     The Court should dismiss the case without prejudice or, alternatively, stay or transfer it.**

When there is a likelihood of substantial overlap between two cases, dismissal without prejudice is a default remedy. *W. Gulf Mar. Ass'n*, 751 F.2d at 729 ("[A] district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court."); *see Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*, 694 F. App'x 225, 227 (5th Cir. 2017) (affirming dismissal without prejudice). Moreover, because Plaintiff's TCPA claim and her putative class is subsumed by the TCPA claims and putative classes in *Matlock*, dismissal will not prejudice Plaintiff or her putative class. The early posture of this lawsuit means that virtually no work is lost in a dismissal, and if *Matlock/Humphrey* for some unknown reason does not resolve Plaintiff's claims, she can re-file her complaint in this District.

If the Court declines to dismiss this case, however, then it should stay the case or transfer it to the Eastern District of California. *See W. Gulf Mar. Ass'n*, 751 F.2d at 729 n.1 ("In addition to outright dismissal, it sometimes may be appropriate to transfer the action or to stay it."). The guiding principle is that "the court initially seized of a controversy"—here, the *Matlock* and *Humphrey* court—"should be the one to decide whether it will try the case." *Mann Mfg.*, 439 F.2d at 407. Under that principle, this case should not proceed until *Matlock* and *Humphrey* are resolved.

**II.     The Court should stay this case pending FCC rulemaking under the primary jurisdiction doctrine.**

Under the primary jurisdiction doctrine, courts may stay a case in "defer[ence] to an administrative agency for an initial decision on questions of fact or law within the peculiar competence of the agency." *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 810 F.3d 299, 309 (5th Cir. 2016) (quoting precedent). The "doctrine rests both on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently), and on the advantages of allowing an agency to apply its expert judgment"—which "extends to

the policy judgments needed to implement an agency's rationale." *Allnet Commc'n Serv., Inc. v. Nat'l Exch. Carrier Ass'n, Inc.*, 965 F.2d 1118, 1120 (D.C. Cir. 1992) (citations omitted). "[T]he primary jurisdiction doctrine requires the district court to balance [(A)] the assistance potentially provided by an agency's specialized expertise against [(B)] the litigants' certainty of delay." *Occidental*, 810 F.3d at 310. And courts in this District have held that "a stay is generally appropriate if the motion for a stay is made early in the proceedings and a stay is unlikely to prejudice the plaintiff." *Dwyer v. USAA Sav. Bank*, 2017 WL 7805760, at *1 (W.D. Tex. Nov. 21, 2017).

> A. **Key issues in this case are already pending before the FCC and require its specialized expertise.**

There are many potentially dispositive questions in this nascent case that are currently before the FCC, and that fall squarely within its expertise under the TCPA. These questions include:

> Does the "called party" refer to "the person the caller expected to reach"? Or does it refer to the party the caller reasonably expected to reach? Or does it refer to "the person actually reached, the wireless number's present-day subscriber after reassignment"? Or does it refer to a "'customary user' ('such as a close relative on a subscriber's family calling plan'), rather than . . . the subscriber herself"? What interpretation best implements the statute in light of the decision? Should the Commission maintain its reasonable-reliance approach to prior express consent?

FCC Seeks Comment, 83 Fed. Reg. at 26286 (ellipsis and internal quotation marks in original); *see also In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 F.C.C. Rcd. at 12045 n.133 ("We acknowledge that the Commission still has before it the question of whose prior express consent it must have under the TCPA. For example, must the caller have the prior express consent of the current subscriber or the subscriber it reasonably expected to reach?").

Take, for example, the first question: whether "called party" refers to "the person the caller expected to reach." If the FCC answers yes, then the TCPA immunizes any entity from liability if it received consent from the expected call recipient. *See* 47 U.S.C. § 227(b)(1)(A)

9

(immunizing calls "made with the prior express consent of the called party"). Here, the calls Gonzalez alleges she received are HouseCalls calls. FAC ¶¶ 26-28. Because the expected recipients of HouseCalls calls are health plan members (Wong Decl. ¶ 2), they consent to be called. And Gonzalez does not allege she notified Optum that she owned the number at issue before filing her complaint. Thus, if the FCC determines "called party" refers to the expected call recipient, Optum could not be liable for calling Gonzalez and her claim will fail in its entirety.

Another FCC decision that could defeat Plaintiff's claim would be expansion of the reassigned number safe harbor. The FCC once had a safe harbor limited to merely the first call to a reassigned number, but the D.C. Circuit set it aside as too narrow. *See ACA Int'l*, 885 F.3d at 707-09. The court reasoned "no cognizable conception of 'reasonable reliance' support[ed] the Commission's blanket, one-call-only allowance," because the first call "might give the caller no indication whatsoever of a possible reassignment." *Id.* at 707. In partial response, the FCC created a future safe harbor for callers who check a reassigned number database that has yet to be implemented. *See* FCC, *Consumer & Governmental Affairs Bureau Establishes Guidelines for Operation of the Reassigned Numbers Database*, No. CG17-59, 2020 WL 1907792, at *1 (Apr. 16, 2020). But the FCC has not addressed what safe harbors exist before the database is implemented. Here, Plaintiff does not allege that she ever told Optum that it had the wrong number. The D.C. Circuit's instructions to the FCC indicate that the FCC is likely to conclude that in similar situations, calls to reassigned numbers do not trigger the TCPA's heavy penalties.

The fact that these issues are already before the FCC makes this case a paradigmatic one for a stay under the primary jurisdiction doctrine. *See, e.g.*, *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 420 (5th Cir. 1976). "The advisability of invoking primary jurisdiction is greatest when the issue is already before the agency." *Miss. Power & Light*, 532 F.2d at 420; *accord, e.g.*, *Am. Trucking Ass'ns, Inc. v. ICC*, 682 F.2d 487, 492 (5th Cir. 1982) (staying case because the agency "has already initiated administrative proceedings and is well on

10

its way to formulating a policy"); *Post v. Perry Gas Transmission, Inc.*, 616 F. Supp. 1, 3 (N.D. Tex. 1983) (same).

Staying this case would be consistent with the actions of other courts facing similar cases. As discussed above, *Matlock* and *Humphrey* raise the same issues as this case and are stayed under the primary jurisdiction doctrine. And two courts in this District recently stayed TCPA actions on primary jurisdiction grounds. *See* Order, *Bell v. Portfolio Recovery Assocs., LLC*, No. 5:18-cv-243, ECF No. 26 (W.D. Tex. Sept. 10, 2018) (staying TCPA putative class action pending FCC decision on "automatic telephone dialing system"); *Dwyer*, 2017 WL 7805760, at *2 (same); *see also Freeman v. Specialty Retailers Inc.*, 2015 WL 12804530, at *2 (S.D. Tex. Jan. 20, 2015) (same, pending FCC decision on "called party").

### B. A brief stay will not prejudice Plaintiff, but denying a stay will prejudice Optum.

Gonzalez will face minimal delay from a stay pending the FCC's rulemaking because courts expect an "impending FCC ruling" on whether "called party" refers to the expected call recipient, among other things. *Barnes*, 2020 WL 30373, at *3 (staying TCPA case pending decision on autodialer definition). The FCC's comment period is closed. And recent legislation imposes a related Congressional deadline: The TRACED Act requires the FCC report by the end of 2020 on issues closely linked to whose consent matters: the reassigned number database (which apparently is in progress) and the safe harbor for using that database. *See* TRACED Act, § 9, 133 Stat. at 3283-84.

Gonzalez also will not be prejudiced by waiting for the FCC's rulemaking. For one, she does not allege a continuing violation of the TCPA. To the contrary, she claims she received just three calls, the most recent of which was October 31, 2019—several months in the past. FAC ¶ 26. Also, "[w]hile the stay may potentially delay Plaintiff['s] recovery, the litigation is at an early stage." *Henry v. United States*, 2006 WL 8434868, at *3 (W.D. Tex. Sept. 27, 2006). The pleadings have not been resolved, case deadlines have not been calendared, no discovery has begun, and no dispositive motions have been filed. "Thus, the potential harm to Plaintiff[] is not

11

significant." *Id.*; *accord, e.g.*, *Taj Constr., Inc. v. Architectural Prod. Co.*, 2008 WL 11334037, at *2 (W.D. Tex. Nov. 21, 2008) ("Given the early stage of litigation, a stay would not prejudice Plaintiff.").

By contrast, moving forward with this case now will require extensive internal investigation, discovery, and motion practice, and would divert resources and employee time from providing members healthcare services and responding to the COVID-19 global pandemic. *See* Wong Decl. ¶¶ 17-18. These resources are not recoverable even if the FCC subsequently negates Gonzalez's claim. And litigating while the FCC considers dispositive issues will waste judicial and party resources on issues that likely will be moot in the "impending" future. *Barnes*, 2020 WL 30373, at *3. Accordingly, the Court should stay this case pending the FCC's rulemaking.

## III. At a minimum, the Court should stay this case pending the Supreme Court's decision on whether the TCPA's cell phone restriction is invalid in its entirety.

The Court should at least stay this case for the next few months to await the Supreme Court's potentially dispositive ruling in *Barr v. American Association of Political Consultants* ("*AAPC*").

A district court has "a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). In deciding whether to stay a case awaiting a decision in another legal proceeding, courts weigh three factors: (A) prejudice to the moving party if a stay is denied; (B) prejudice to the non-moving party if a stay is granted; and (C) other "difficulties inherent in the general situation, including potential judicial inefficiency." *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545-46 (5th Cir. 1983); *accord McGregory v. 21st Century Ins. & Fin. Servs., Inc.*, 2016 WL 11643678, at *3 (N.D. Miss. Feb. 2, 2016). As shown below, all three factors support issuing a stay here.

Other district courts throughout the country have stayed their TCPA putative class actions pending *AAPC*. *See, e.g.*, *Wright v. eXp Realty, LLC*, 2020 WL 1149906, at *1 (M.D. Fla. Feb. 7,

12

2020) (issuing stay even though plaintiffs had filed motion for class certification months before); *see also, e.g.*, *Richard Nakai v. Charter Commc'ns, Inc.*, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020); *Franklin v. Navient Corp.*, 2020 U.S. Dist. LEXIS 57039, at *3 (D. Del. Apr. 1, 2020); *Lindenbaum v. Realgy, LLC*, 2020 WL 1908639, at *2 (N.D. Ohio Mar. 19, 2020); *Seefeldt v. Entm't Consulting Int'l, LLC*, 2020 WL 905844, at *3 (E.D. Mo. Feb. 25, 2020). Courts in this Circuit likewise routinely stay cases where, like here with *AAPC*, their outcome might turn on a Supreme Court decision. *See, e.g.*, *Finley v. United States*, 2017 WL 11454844, at *1 (N.D. Tex. Jan. 10, 2017) (granting stay because the Supreme Court's decision would "likely impact a final decision in the instant case"); *Adams v. ACSO of Tex., Inc.*, 2011 WL 2421088, at *4 (W.D. Tex. June 13, 2011) (granting stay because the Supreme Court's decision would resolve the case); *Morris v. Wyeth, Inc.*, 2011 WL 311009, at *2 (W.D. La. Jan. 27, 2011) (granting stay because the Supreme Court's decision could "potentially reduc[e] the scope of fact and expert discovery"); *see also Barricks v. Minyard Food Stores, Inc.*, 170 F.3d 184, 184 n.7 (5th Cir. 1999) ("[W]e would be inclined to defer to the [Supreme] Court and to grant [the plaintiff's] motion for a stay of these proceedings if the case actually turned on this question.").

### A. Denying a stay pending the U.S. Supreme Court's decision will prejudice Optum.

As discussed above, it is substantially likely that the Supreme Court will strike down the TCPA's cell phone provision in *AAPC* this term—that is, by the end of June 2020. *See, e.g.*, *Nakai*, 2020 WL 1908949, at *6 ("[A] temporary stay in this action through the end of June 2020—when this Court expects a decision in *AAPC*—is appropriate here.") (footnote omitted).

The Supreme Court's reversal rate is approximately 73 percent. *See, e.g.*, Dyk, *supra*, at 72. That rate is even higher where, like in *AAPC*, there is no circuit split. *See* Wasby, *supra*, at 128. And reversal in *AAPC* entails either saving the TCPA's cell phone provision—debt exception and all—or invalidating it entirely. The former is unlikely as it would repudiate the Supreme Court's recent First Amendment jurisprudence, which subjects to fatal strict scrutiny restrictions on speech that draw distinctions "based on the message a speaker conveys." *Reed v.*

13

*Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). The cell phone provision is such a restriction. It bans calls unless they are "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Its applicability "thus depend[s] entirely on the communicative content of the [call]." *Reed*, 135 S. Ct. at 2227. Put differently, the restriction "require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (quoting *FCC v. League of Women Voters of California*, 468 U.S. 364, 383 (1984)). If a call mentions anything but collecting federal debt, it violates the restriction. Thus, the restriction is content-based.

Rather than save the TCPA's cell phone restriction, the Supreme Court is likely to strike it down. Indeed, that outcome would mirror the Court's treatment of other content-based speech restrictions. *See, e.g.*, *Reed*, 135 S. Ct. at 2224, 2227 (striking down entire "provisions" for being content-based, not just severing unconstitutional "exemptions"); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 232, 234 (1987) (same); Br. for Respondents at 33-50 (Mar. 25, 2020) (discussing caselaw in depth); *see also* Br. for Healthcare Companies as Amici Curiae Supporting Respondents at 17-25 (Apr. 1, 2020) (arguing Article III bans severance of the debt exception). And this imminent "potential total collapse of the TCPA" would explain "why the decision on certiorari in [*Facebook v.*] *Duguid* remains pending" despite a growing circuit split on the question presented there: the definition of an "automatic telephone dialing system" under the TCPA. *Seefeldt*, 2020 WL 905844, at *3; *see Facebook Inc. v. Duguid*, No. 19-511, SCOTUSblog, https://www.scotusblog.com/case-files/cases/facebook-inc-v-duguid/; *Duran v. La Boom Disco, Inc.*, 2020 WL 1682773, at *1 n.5 (2d Cir. Apr. 7, 2020) (noting the circuit split between (a) the Second and Ninth Circuits; and (b) the Third, Seventh, and Eleventh Circuits).[4]

With the TCPA's cell phone restriction gone, Gonzalez's whole claim will fail. As described above, moving forward with this case now would require Optum to divert critical

---

[4] The statute's "ATDS" element at issue in *Duguid* is immaterial if the TCPA violates the First Amendment.

resources over the next few months from providing health care services to members during the ongoing federal and state health emergencies and responding to the unprecedented COVID-19 pandemic, to litigating this case in motion practice and discovery.  *See* Wong Decl. ¶¶ 4-18; *see also, e.g.*, *Nakai*, 2020 WL 1908949, at *6 ("[I]n the absence of a stay, [defendant] would be required to spend additional resources defending against this putative nationwide class action that may ultimately be rendered moot by the decision in *AAPC*.").  These costs are not recoverable even if the Supreme Court strikes down the cell phone restriction in the coming months.  Accordingly, this Court should at least stay this case until the Supreme Court decides *AAPC*.

> **B.    Granting a stay will not prejudice Plaintiff because she does not allege a continuing violation, this case is at an early stage, and the stay would be brief.**

Gonzalez, on the other hand, would not be prejudiced by a stay for at least three reasons.  *First*, as explained above, Gonzalez does not allege a continuing TCPA violation, just three discrete calls that occurred several months ago.  *See* FAC ¶ 26.  *Second*, because this "litigation is at an early stage[,] . . . the potential harm to Plaintiff[] is not significant."  *Henry*, 2006 WL 8434868, at *3.  *Third*, this issue will be decided soon.  The Supreme Court will likely decide *AAPC* by June 29 at the latest.  Courts in this District and Circuit have granted stays when a Supreme Court decision was much further off.  *See, e.g.*, Order, *Whole Women's Health v. Paxton*, No. 17-51060 (5th Cir. Mar. 13, 2019) (per curiam) (staying appeal pending "presumably" forthcoming *petition* for certiorari); *Adams*, 2011 WL 2421088, at *4 (granting stay pending a Supreme Court case that would not be decided until the next term); *Johns v. Evergreen Presbyterian Ministries, Inc.*, 826 F. Supp. 1050, 1062 (E.D. Tex. 1993) ("[T]he ends of justice, judicial economy and simple prudence compel the Court to stay this action until the Supreme Court renders its *Landgraf* [*v. USI Film Prod.*, 511 U.S. 244 (1994)] decision next Term."); *see also Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) (staying TCPA case and collecting five other cases

15

in which the district court issued stays in June or July because of Supreme Court cases scheduled for the next term—such as *Spokeo*, which the Court decided about 11 months after those stays).

### C. A temporary stay would promote judicial economy during a global pandemic.

"[A]ny proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am. Ass'n* will be—among other things—a waste of judicial resources and a waste of the parties' time and energy." *Wright*, 2020 WL 1149906, at *1. This "judicial inefficiency," *Wedgeworth*, 706 F.2d at 546, stems from the possibility that the Supreme Court ends or fundamentally alters Gonzalez's claim as a matter of law within the next four months. So "[s]taying these proceedings will conserve time and resources that could otherwise be undone by the pending [Supreme Court] decision." *Rezko v. XBiotech Inc.*, 2017 WL 4544683, at *1 (W.D. Tex. Oct. 6, 2017) (reasoning that moving forward is "not prudent given the Supreme Court's pending clarification" in five months).[5] The importance of preventing judicial inefficiency and not wasting resources is even greater now while the judiciary and the parties are responding to a global pandemic.

In sum, given the substantial prejudice to Optum if a stay is denied, the lack of prejudice to Gonzalez if it is granted, and the potential judicial inefficiencies if the case is not stayed, the Court should at a minimum temporarily stay this case until the Supreme Court's decision this term in *AAPC*.

### CONCLUSION

For the foregoing reasons, Optum respectfully requests that the Court grant Defendant's motion and dismiss, stay, or transfer this case to the U.S. District Court for the Eastern District of California.

---

[5] A stay would be warranted even if the Supreme Court had not yet granted certiorari, because as long as there is a possibility the Court will decide that Gonzalez's claims "cannot be brought under [the statute], this court and the parties should not expend the resources necessary to litigate a claim that is not legally viable." *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 2014 WL 2815683, at *2 (N.D. Tex. June 23, 2014).

Dated April 24, 2020                                    Respectfully submitted,

By:   */s/ Amber D. Reece*
Maxwell Pritt (*Pro Hac Vice* pending)
Matthew Chou (*Pro Hac Vice* pending)
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Facsimile: (415) 293-6899
Telephone: (415) 293-6800
Email: mpritt@bsfllp.com
          mchou@bsfllp.com

Shira Liu (*Pro Hac Vice* pending)
**BOIES SCHILLER FLEXNER LLP**
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Facsimile: (415) 752-2400
Telephone: (415) 752-2490
Email: sliu@bsfllp.com

Andrew G. Jubinsky (Texas Bar No. 11043000)
Amber D. Reece (Texas Bar No. 24079892)
**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202-3776
Facsimile: (214) 939-2090
Telephone: (214) 939-2000
Email: andy.jubinsky@figdav.com
          amber.reece@figdav.com

*Counsel for Defendant Optum, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 24, 2020, a true and correct copy of this document has been filed electronically via the Court's ECF filing system, and subsequently all counsel in this matter will be notified via the Court's ECF filing system.

                                          */s/ Amber D. Reece*
                                          Amber D. Reece

Case 6:19-cv-00700-ADA-JCM   Document 23   Filed 04/24/20   Page 20 of 20